FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 26, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LYNN J. H., | NO: 2:17-CV-00371-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 14 and 16. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Cathy M. Helman. The defendant is represented by Special Assistant United States Attorney Justin L. Martin. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the court **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14, and **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16.

**JURISDICTION**

Plaintiff Lynn J. H.[1] filed for disability insurance benefits on July 28, 2014, and for supplemental security income on September 28, 2015. Tr. 266-75. At the hearing, Plaintiff corrected the alleged onset date to March 8, 2013. Tr. 48. Benefits were denied initially, Tr. 175-81, and upon reconsideration, Tr. 184-89. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on November 16, 2016. Tr. 46-95. Plaintiff was represented by counsel and testified at the hearing. *Id.* The ALJ denied benefits, Tr. 22-45, and the Appeals Council denied review. Tr. 1-7. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 47 years old at the time of her alleged onset of disability. *See* Tr. 125. She completed the twelfth grade. Tr. 142. Plaintiff has work history as a medical billing clerk and audit clerk. Tr. 73-74, 91. She testified that she was

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

"severanced" from her job as an audit clerk, which she held for nineteen years, because they "closed the department"; and she was terminated from her subsequent job as a billing clerk while she was in a coma after sustaining her traumatic brain injury. Tr. 74. Plaintiff testified that she would not be able to do a full-time job because of anxiety, panic attacks, poor memory, and difficulty concentrating. Tr. 79-81. She further reported that her headaches would "affect [her] ability to be at work" six to ten days a month. Tr. 82-83.

In March 2013, Plaintiff suffered a traumatic brain injury after falling in her driveway. Tr. 827. She underwent an emergency craniectomy for an acute subdural hematoma and herniation syndrome. Tr. 825. Three months later, after a "prolonged stay" in the hospital and at an inpatient rehabilitation facility, her treating surgeon noted she "made a dramatic recovery." Tr. 920.

At the hearing, Plaintiff testified that she has panic attacks almost every day, but also reported that the medication she is taking for anxiety is helping. Tr. 78. She has headaches daily; migraines two to three times a month that last two days on average; her short-term memory is poor; and she is easily distracted. Tr. 76-79. Plaintiff testified that she drives regularly, and feels her medication controls the seizures well enough for her to not be a hazard when driving. Tr. 81-82. Her "major activities" during the day are cooking, vacuuming, dusting, reading, watching TV, looking at the internet on her phone, and she goes to lunch with friends. Tr. 85-87.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful

activity since March 8, 2013, the alleged onset date. Tr. 27. At step two, the ALJ

found Plaintiff has the following severe impairments: post-traumatic seizure

disorder/complex partial seizures; cervical spine degenerative disc disease;

cognitive disorder, not otherwise specified (NOS); generalized anxiety disorder.

Tr. 27. At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 28. The ALJ then found that Plaintiff had the RFC

> for a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).
> The claimant can lift no more than 20 pounds at a time occasionally and can
> lift or carry up to 10 pounds at a time frequently; has no limitations as to
> sitting, standing, or walking in an 8 hour workday with normal breaks; can
> never climb ladders, ropes, or scaffolds or work at unprotected heights; no
> exposure to hazardous machinery; and no commercial driving. Mentally, the
> claimant can understand, remember, and carry out simple, routine work
> instructions and work tasks; can have occasional contact with the general
> public; and no fast paced or strict production quota type work.

Tr. 30. At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work. Tr. 35. At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, including: mail clerk, office helper, and office cleaner. Tr. 36. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 8, 2013, through the date of the decision. Tr. 37.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ erred at step five.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could

reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 30.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

### 1. Improvement with Treatment

First, the ALJ found that Plaintiff's condition improved with treatment. Tr. 26. Conditions effectively controlled with treatment are not disabling for purposes of determining eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Moreover, while an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989.

Here, as noted by the ALJ, Plaintiff sustained "a traumatic brain injury, a subdural hematoma, on the alleged onset date of March 8, 2013. The severity of the injury resulted in a prolonged hospitalization of nearly 5 weeks and during which [Plaintiff] underwent an emergent craniotomy. A head CT had confirmed a right temporal skull fracture." Tr. 31 (citing Tr. 632-33, 639, 827). However, subsequent to this traumatic injury, as set out by the ALJ, the longitudinal record indicates that "medical improvement did occur with treatment." Tr. 31-32.

First, the ALJ relied on expert testimony that medical improvement occurred following her brain injury, including multiple references to Plaintiff making a

"remarkable recovery." Tr. 31, 67, 568, 571, 825. After only 2 weeks of inpatient rehabilitation, the records indicated "moderate" deficits in judgment, reasoning, and organizational tasks; improved cognition and mobility; good short-term memory; and normal speech and language. Tr. 31, 569. In May 2013, Plaintiff's treating surgeon reported that Plaintiff made a "dramatic recovery;" later that same month her surgeon noted that Plaintiff made a "remarkable recovery with only subtle short-term memory problems;" and in June 2013 her surgeon found Plaintiff could "resume all normal activities," although she "may not be unable to return" to her previous work as a medical biller. Tr. 31, 825, 917, 920. In August 2013, as noted by the ALJ, a mental evaluation "noted evidence of cognitive deficits, but not to the extent all work activity would be precluded." Tr. 31, 958-59. The evaluation noted intact memory, no difficulty comprehending or remembering test instructions or test items, no problems with cognitive sluggishness or fatigue, working memory in the average range "suggesting normal insight and judgment and normal planning ability," no comprehension or verbal interaction deficits, and low average range IQ. Tr. 31 (citing Tr. 955-59).

The ALJ additionally acknowledged that Plaintiff experienced seizures in September 2013, February 2014, October 2015, and July 2016. Tr. 31-32, 992, 1189, 1386. However, as noted by the ALJ, Plaintiff's medication was successfully adjusted after each seizure occurred; and across the adjudicatory period, Plaintiff consistently reported that she was doing well, had a stable mood,

and her overall health was much better. Tr. 31-32 (citing Tr. 975 ("doing quite well"), 996 ("doing quite well" and "mood has been more stable" on medication), 1397 ("overall she's feeling well without any changes in mood")). The ALJ found these "[a]dmissions of [Plaintiff] doing well further suggests that she did improve with treatment." Tr. 32. Moreover, the ALJ cited "unremarkable" mental status examinations and neurological exams throughout the adjudicatory period, including consistent findings that Plaintiff was alert and oriented, could recall 3 out of 3 objects after 5 minutes, could follow 3-step commands without difficulty, had intact judgment, could spell "black" forward and backward, had no signs of gait deficits, had intact motor strength, had intact sensation to light touch, and had normal deep tendon reflexes and intact coordination. Tr. 31 (citing Tr. 976, 988-89, 993, 997, 1386, 1389, 1398). Finally, the ALJ noted that "treatment records did not substantiate testimony of recurring headaches or migraines nor significant medication side effects." Tr. 32. Based on the foregoing, the ALJ concluded that the record indicates that Plaintiff "has overall continued to control seizure activity with medication management." Tr. 32.

Plaintiff argues that improvement with treatment was an invalid reason for the ALJ to discount Plaintiff's subjective claims because "substantial evidence shows that [Plaintiff's] condition did not improve." ECF No. 14 at 13. In support of this argument, Plaintiff generally cites evidence of Plaintiff's treatment during the adjudicatory period, including: a timeline of Plaintiff's treatment directly

following her traumatic brain injury; treatment by Dr. Jeffrey Trail including diagnosis of "stable seizure disorder"; Dr. Jay Toews' opinion, discussed below in detail, that Plaintiff's ability to "sustain a normal pace and complete a normal workweek may be slightly variable and more than normal work pressures would compromise her ability to perform adequately or to complete a normal workweek"; Dr. Marie Atkinson's prescribed increases in the amount of seizure medication provided to Plaintiff over time, and her note that Plaintiff would require "lifelong administration of anti-seizure medication"; and the moderate and marked limitations assessed by Dr. John Arnold, which were properly rejected by the ALJ, as discussed below. ECF No. 14 at 6-11 (citing Tr. 843-49, 952-85, 989, 1368-69). However, as discussed extensively herein, the same records cited by Plaintiff also include: largely unremarkable mental status and neurological examinations, mild to moderate cognitive test results, and consistent reports by Plaintiff that she is doing well and her mood is stable. Moreover, regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence from the overall record, as cited extensively above, to support the conclusion that Plaintiff improved with treatment, and her allegations of severe impairments were inconsistent with the longitudinal medical record. Tr. 31-32; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

Lastly, Plaintiff argues that "[i]n finding that medical improvement occurred, the ALJ misconstrued and [sic] subjectivity selected statements from her treating doctor, Dr. Giac Consiglieri." ECF No. 14 at 12. Specifically, Plaintiff contends that Dr. Consiglieri's statements that Plaintiff made a "dramatic recovery" after brain surgery, and could resume all normal activities, "clearly did not mean that [Plaintiff's] condition improved to the extent that she was capable of working." ECF No. 14 at 12; Tr. 917, 920. In support of this argument, Plaintiff correctly notes that while Dr. Consiglieri released her to "resume all normal activities," he further noted that "given her traumatic brain injury she may not be able to return to [her] specific line of work" as a medical biller.[2] Tr. 917. However, regardless of the ultimate disability conclusion, in the context of considering Plaintiff's subjective symptoms claims, the ALJ properly considered Dr. Consiglieri's report that Plaintiff "made a dramatic recovery" three months

_____

[2] As noted by Plaintiff, Dr. Consiglieri also noted that Plaintiff "inquired about social security disability which I think may be appropriate in this situation." ECF No. 14 at 12; Tr. 917. However, Dr. Consiglieri's opinion as to Plaintiff's ability to work is not entitled to any special significance, as it is a statement on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner").

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

after surgery for subdural hematoma, as evidence that her condition improved with treatment. *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Based on the foregoing, the Court finds that Plaintiff's improvement with treatment across the longitudinal record was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims. *See Burch*, 400 F.3d at 679.

### 2. Daily Activities

Second, the ALJ noted that "[a]ctivities [Plaintiff] performed routinely during the period [at] issue also strongly suggests that in spite of her impairments she remained capable of performing simple, light work." Tr. 32. Evidence about daily activities may properly be considered by the ALJ when evaluating Plaintiff's symptom claims. *Fair*, 885 F.2d at 603. However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the Court may decline to address this reason because it was not challenged with specificity in Plaintiff's opening brief. *Carmickle*, 533 F.3d at 1161 n.2. Moreover, as noted by the ALJ, Plaintiff testified that she cooks, does household chores including vacuuming and dusting, reads "educational" books for a couple of hours daily, watches television news daily, and uses social media on her phone daily. Tr. 32, 85-86. The Court also notes that Plaintiff testified she went to lunch on occasion with friends, traveled by airplane to visit her daughter, and drives regularly because her seizure condition is controlled by medication "well enough for [her] to not be a hazard driving." Tr. 81, 84, 87.

The ALJ additionally cited Plaintiff's report in August 2013, a few months after her injury, that she was fully dependent for basic self-care and was able to do light housework; and her report in 2015 that she was able to attend to her self-care, and had "a full complement of independent living skills" including preparing meals and driving her vehicle routinely. Tr. 32 (citing Tr. 348-50, 955, 1006). Based on this evidence, it was reasonable for the ALJ to conclude that the activities routinely performed by Plaintiff during the adjudicatory period suggest she remained capable of performing simple light work. Tr. 32; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment). This was a clear, convincing, and unchallenged reason for the ALJ to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and

citation omitted). Plaintiff argues the ALJ erroneously considered the opinion of examining psychologist John Arnold, Ph.D. ECF No. 14 at 14-17.

In August 2015, Dr. Arnold examined Plaintiff and completed a psychological evaluation. Tr. 307-11. Dr. Arnold opined that Plaintiff had moderate limitations in six categories of "basic work activities"; and marked limitations in her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (2) learn new tasks; (3) adapt to changes in a routine work setting; (4) be aware of normal hazards and take appropriate precautions; and (5) complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 1007. Dr. Arnold rated the overall severity based on the combined impact of all the diagnosed mental impairments as "marked." Tr. 1007. The ALJ granted Dr. Arnold's opinion little weight. Tr. 34-35. Because Dr. Arnold's opinion was contradicted by medical expert Margaret Moore, Ph.D., Tr. 70-73, and examining psychologist Jay Toews, Ed.D., Tr. 958-59, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Arnold's opinion. *Bayliss*, 427 F.3d at 1216.

As an initial matter, the Court may decline to consider two of the ALJ's reasons for discounting Dr. Arnold's opinion because they were not raised with specificity in Plaintiff's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. First, the ALJ noted that "contemporaneous testing by Dr. Arnold strongly suggested far

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

less limits. For example, upon testing memory and concentration, [Plaintiff] performed within normal for memory and concentration." Tr. 34. Thus, the ALJ properly rejected Dr. Arnold's opinion because it was inconsistent with his own treatment notes. *Tommasetti*, 533 F.3d at 1041; *see also Bayliss*, 427 F.3d at 1216 ("discrepancy" between a treating provider's clinical notes and that provider's medical opinion is an appropriate reason for the ALJ to not rely on that opinion regarding the claimant's limitations). Second, the ALJ noted that the record "showed signs consistent with a capacity for simple, routine work. Notably, [Plaintiff] exemplified such in the performance of her daily activities, including preparing meals, doing household chores, and driving a vehicle." Tr. 34. The ALJ may discount Dr. Arnold's opinion because it is inconsistent with Plaintiff's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). These were specific, legitimate, and unchallenged reasons for the ALJ to give Dr. Arnold's opinion little weight.

In addition, the ALJ found "the record as a whole, as medical expert testimony strongly indicated, showed signs consistent with a capacity for simple, routine work." Tr. 34. Specifically, "Dr. Toews' comprehensive cognitive exam discussed [earlier in the decision] showed signs of greater mental functioning, including working memory in the average range." Tr. 34-35. An ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1195 (9th Cir. 2004); *see also Orn*, 495 F.3d at 631 (consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion).  First, Plaintiff argues the ALJ's finding that Dr. Toews' exam showed "signs of greater mental functioning" is "not a fully accurate statement when Dr. Toews' evaluation is viewed in its entirety."[3]  ECF No. 14 at 15.  In support of this argument, Plaintiff generally references test results from Dr. Toews' evaluation, including: WAIS-IV and WMS-IV results in the "low average range"; "extremely poor" auditory and visual memory index scores; and "poor" scores on the Trails A and B assessment.  ECF No. 14 at 15; Tr. 956-59.

However, as noted by the ALJ, Dr. Toews assessed Plaintiff's global assessment of functioning score as "indicative of moderate symptoms"; and Dr.

---

[3] Plaintiff also briefly notes, without specific argument or citation to the record, that the "ALJ rejected Dr. Arnold's opinion based on the testimony of Dr. Veraldi. However, Dr. Veraldi did not treat or examine [Plaintiff].  He only reviewed the record."  ECF No. 14 at 14-15.  First, the Court presumes Plaintiff is referring to the expert testimony of Dr. Margaret Moore, as Dr. Veraldi did not offer medical testimony in this case.  *See* Tr. 46.  Moreover, as discussed in detail below, a nonexamining opinion may constitute substantial evidence if it is, as specifically noted by the ALJ in this case, consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632–33.

Toews concluded that Plaintiff demonstrated a working memory in the average range with "some overall cognitive decline and mild to moderate memory problems." Tr. 958-59. The Court's review of Dr. Toews' opinion further indicates that, based on the extensive testing administered as part of the evaluation, Dr. Toews found Plaintiff had no problems with cognitive sluggishness or fatigue; slight limitations in visual-perceptual and visual-motor skills; and no comprehension or verbal interaction deficits. Tr. 958-59. Finally, Dr. Toews opined that Plaintiff was capable of remembering 3-4 step instructions; she was able to relate and interact appropriately; she would be able to perform work routines not requiring more than routine judgments and decisions; she would be able to interact with the general public; her ability to sustain a normal work pace and complete a work week "may be slightly variable"; and only "more than normal" work pressures would compromise her ability to perform adequately or complete a normal work week. Tr. 34, 959.

The ALJ specifically found that Dr. Toews' opinion is "consistent with his comprehensive contemporaneous evaluation during which [Plaintiff] demonstrated a working memory in the average range and exhibited 'some overall cognitive decline and mild to moderate memory problems.'" Tr. 34. Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the record as a whole, including the examining opinion of Dr. Toews, was inconsistent with the severity of the

limitations opined by Dr. Arnold. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to discount Dr. Arnold's opinion.

Finally, Plaintiff generally contends that "[t]he ALJ essentially rejected the opinions of all the treating and examining physicians in the file, while relying upon the opinions of non-treatment, non-examining State Agency Medical Consultants and testifying medical experts Dr. Steven Goldstein and Dr. Margaret Moore." ECF No. 14 at 16. This argument is inapposite. The only "treating or examining" opinion explicitly rejected by the ALJ was Dr. Arnold's. As discussed extensively above, the ALJ did not "reject" Dr. Toews' examining opinion, rather, the ALJ explicitly found the limitations opined by Dr. Toews were consistent with the assessed RFC. Tr. 34. Moreover, while an ALJ generally gives more weight to treating and examining physicians, than to opinions by nonexamining reviewing physicians and medical experts; those nonexamining opinions may nonetheless constitute substantial evidence if they are, as specifically noted by the ALJ in this case, consistent with other independent evidence in the record. Tr. 33-35; *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632–33. Plaintiff generally contends that the nonexamining doctors' "determinations are not consistent with the record of physicians who actually examined [Plaintiff] and found limitations." ECF No. 14 at 16. However, Plaintiff fails to cite any evidence of functional limitations opined

by a treating or examining provider, aside from Dr. Arnold, that are not consistent with the assessment of the medical experts and the state agency reviewing physicians.[4]  In fact, the ALJ specifically found that medical expert Dr. Margaret Moore's testimony was consistent with Dr. Toews' opinion, as well as the opinions of the state agency reviewing physicians.  Tr. 33.

Based on the foregoing, the Court finds the ALJ gave specific and legitimate reasons for giving little weight to Dr. Arnold's opinion.  Moreover, due to the consistency of their opinions with each other, and independent evidence in the

---

[4] Plaintiff argues that "the ALJ does not identify the portion of the longitudinal record that made these opinions more valuable than the opinions of treating neurologist Dr. Consiglieri and epilepsy specialist Dr. Atkinson."  ECF No. 14 at 16-17.  However, while the ALJ properly considered these physicians' treatment records as part of the overall analysis, neither physician offered an opinion as to Plaintiff's specific functional limitations. Thus, the ALJ did not err in failing to specifically discuss Dr. Consiglieri's or Dr. Atkinson's "opinions" because they did not assess any functional limitations. *See, e.g., Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions").

longitudinal record, the ALJ properly granted more weight to the opinions of examining provider Dr. Toews, the testifying medical experts, and the reviewing state agency consultants.

## C. Step Five

Last, Plaintiff generally argues the ALJ erred at step five. However, as discussed in detail above, the ALJ's evaluation of Plaintiff's symptom claims, and consideration of the medical opinion evidence, was supported by the record and free of legal error. Thus, the assessed RFC, and resulting hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. The ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, properly weighed the medical opinion evidence, and did not err at step five. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is
   **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** December 26, 2018.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge